**Gerald LELIEVE, Plaintiff,**

v.

**Chief of Police Manuel OROSO, et al., Defendants.**

**Case No. 10–23677–CIV.**

United States District Court, S.D. Florida.

Feb. 14, 2012.

**1298**

Diane J. Zelmer, Zelmer Law, Ft. Lauderdale, FL, Christopher Allan Green, Miami City Attorney's Office, Miami, FL, for Plaintiff.

John Anthony Greco, Christopher Allan Green, Miami City Attorney's Office, Miami, FL, for Defendants.

### *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Detective Odney Belfort's ("Belfort['s]") Motion for Partial Summary Judgment on Counts III and VI of the Amended Complaint ("Motion") [ECF No. 81], filed on December 6, 2011. The Court has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND

Defendant Belfort is a police officer employed by the City of Miami Police Department ("Miami Police Department"). (*See* Belfort Decl. ¶ 1 [ECF No. 12–1] ). He has been employed in this capacity for the past sixteen years. (*See id.*).

In October 2006 Belfort was assigned to the Crime Suppression Unit of the Miami Police Department. (*See id.* ¶ 2). On October 11, 2006, Belfort was conducting surveillance of a duplex known for narcotics sales. (*See id.* ¶ 3). At the time of the surveillance, he was inside a van parked in front of the duplex. (*See id.* ¶ 4). Belfort maintains he did not observe other police officers stop Lelieve's vehicle, he was not there when the officers arrested Lelieve, and he "never came into physical contact" with Lelieve. (*Id.* ¶ 16; *see id.* ¶¶ 14, 15).

 Lelieve disputes Belfort's assertion that he was not involved in Lelieve's arrest. Lelieve contends that Belfort arrived on the scene and "was kicking and stomping him as well." (Pl.'s Compl. in Case No. 09–20574–Civ–Lenard/White ("Former Complaint"), at 6 [1] [ECF No.

---

1. Because certain filed documents do not use consistent page numbering, the Court employs the page numbering assigned by the Electronic Case Filing system in all page citations to the Record.

81–1] ).[2] Belfort then "continued to punch, kick, stomp and assault [Lelieve]." (*Id.*).

Following the assault, Lelieve was "placed into the rear of the awaiting Patrol Car bleeding from his mouth[ ][and] spitting blood." (*Id.* 6). The police took Lelieve to Jackson Memorial Hospital ("JMH") for medical treatment. (*See id.* 7). The medical staff examined Lelieve and then released him back into police custody. (*See id.*). Sometime thereafter, Lelieve returned to JMH to undergo surgery for abdominal internal bleeding. (*See id.*). At most two hours elapsed between the time he was placed in the patrol car following his assault to the time he was rushed to JMH for surgery (his second trip to JMH that day). (*See id.* 7–8).

In his Amended Complaint, Lelieve asserts several claims against Belfort. At issue in the present Motion are two of them. First, under Count III, Lelieve alleges that Belfort deprived Lelieve of his civil rights by demonstrating deliberate indifference to his serious medical needs in violation of 42 U.S.C. section 1983. (*See* Am. Compl. 9). Specifically, Lelieve asserts that he had a serious medical condition which required "immediate medical attention" that was "so obvious that even a lay person would easily recognize the necessity for prompt medical attention." (*Id.* ¶ 55). Second, under Count VI of the Amended Complaint, Lelieve alleges that Belfort breached his duty of care by "using excessive force against Lelieve and failing to provide immediate medical care." (*Id.* ¶ 88). In his Motion, Belfort asserts that he is entitled to qualified immunity from the section 1983 claims identified in Count III, and that Count VI fails to state a cause of action for negligence.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge,*

---

2. The Court notes that Lelieve cites to both his Amended Complaint [ECF No. 75] and a copy of a previously filed complaint in Case Number 09–20574–CIV–LENARD–White ("Former Complaint") [ECF No. 81–1] as the sole sources of evidence in support of certain portions of his "Statement of Disputed Facts." (*See* Resp. ¶¶ 1–7). As the Former Complaint was signed and dated by Lelieve under penalty of perjury, the Court accepts Lelieve's Statement of Disputed Facts as supported insofar as Lelieve cites to statements made on personal knowledge in the Former Complaint. *See* Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge...."); 28 U.S.C. § 1746 (permitting the use of unsworn declarations in lieu of a sworn declaration if subscribed "under penalty of perjury" and dated in substantially the same manner as provided in the statute). *See,*

e.g., *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir.1987) (considering a *pro se* prisoner's verified complaint in opposition to motion for summary judgment). However, the Amended Complaint does not contain a signed and dated declaration by Lelieve in compliance with section 1746, and therefore is not evidence the Court may consider in opposition to the Motion. Indeed, a "non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial[.]" *Herrington v. Spruill,* No. 07–80089–CIV–HURLEY, 2008 WL 2687087, 2008 U.S. Dist. LEXIS 122700 (S.D.Fla. June 6, 2008) (citing Fed. R.Civ.P. 56(e); *Coleman v. Smith,* 828 F.2d 714, 717 (11th Cir.1987)).

*Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990).

■■■■ Belfort's Motion addresses the qualified-immunity defense, and as noted, the parties dispute whether Belfort took part in Lelieve's arrest or assaulted Lelieve by punching, kicking, or stomping him. Nonetheless, " '[t]o deny summary judgment any time a material issue of fact remains … could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.' " *Robinson v. Arrugueta,* 415 F.3d 1252, 1257 (11th Cir. 2005) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quotations and citations omitted)). Thus,

> [w]hen conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. When a district court considers the record in this light, it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute.

*Id.*

## III. ANALYSIS

### A. Qualified Immunity

■■■■ Belfort argues he is entitled to qualified immunity from the section 1983

claims identified in Count III. (*See* Mot. 5–10). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kingsland v. City of Miami,* 382 F.3d 1220, 1231 (11th Cir.2004) (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002)). In order to be entitled to the qualified-immunity defense, a government official must demonstrate that the acts complained of were committed within the scope of the officer's discretionary authority. *Id.* at 1232. Once the officer has done so, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002); *see also McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir. 2007); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("[O]nce an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). This is embodied in the Eleventh Circuit's two-part *Zeigler/Rich* analysis:

> 1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
> 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988)); *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam).[3]

---

**3.** District court judges have the discretion to decide which of the two prongs of the quali-

fied immunity analysis should be addressed

In order to prevent dismissal of his or her claims under the doctrine of qualified immunity, a plaintiff must show that the facts, taken in the light most favorable to the plaintiff, demonstrate the defendant violated a constitutional right. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Sharp v. Fisher,* 532 F.3d 1180, 1183 (11th Cir.2008); *McClish,* 483 F.3d at 1237. Even if the facts demonstrate a violation, the plaintiff still has the burden to show that the constitutional rights were "clearly established" at the time of the violation in order to survive summary judgment. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Sharp,* 532 F.3d at 1183; *McClish,* 483 F.3d at 1237. Decisions of the United States Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida can clearly establish law in this jurisdiction. *See McClish,* 483 F.3d at 1237. For the law to be "clearly established," it must be so clear that every objectively reasonable official understands it to prohibit the challenged act. *See Vinyard,* 311 F.3d at 1353. The purpose of this requirement is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier,* 533 U.S. at 206, 121 S.Ct. 2151.

> That the very act (or something materially similar to it) in question has previously been held unlawful by a court is not always necessary. But in light of preexisting law, the unlawfulness must be apparent: plain, clear, obvious. Unless the government official's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent official or one who was knowingly violating the law would have committed the act, the official is entitled to qualified immunity.

*Snider v. Jefferson State Cmty. Coll.,* 344 F.3d 1325, 1328 (11th Cir.2003); *Montoute,* 114 F.3d at 184 ("[T]he qualified immunity

first. *See Pearson v. Callahan,* 555 U.S. 223,

standard is broad enough to cover some 'mistaken judgment,' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Here it is undisputed that Belfort was a government official performing discretionary functions at the time of the conduct at issue. Therefore, the burden shifts to Lelieve to demonstrate that Belfort violated a clearly established statutory or constitutional right to overcome the qualified-immunity defense.

## B. Alleged Constitutional Violations

### 1. Cruel and Unusual Punishment under the Eighth Amendment

Lelieve concedes that "[c]laims involving the mistreatment of ... pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." (Resp. 4 (quoting *Bozeman v. Orum,* 422 F.3d 1265, 1271 (11th Cir. 2005))). Thus, to the extent that Lelieve alleges in Count III of his Amended Complaint that his Eighth Amendment rights were violated after his arrest, that claim is dismissed with prejudice.

### 2. Deliberate Indifference to Medical Needs under the Fourteenth Amendment

A Fourteenth Amendment claim of deliberate indifference to medical needs under 42 U.S.C. section 1983 requires four elements: (1) an objectively serious medical need, (2) an objectively insufficient response to that need, (3) subjective awareness of facts signaling the need, and (4) an actual inference of required medical action

236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

from those facts which would demonstrate deliberate indifference. *See Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000). Here, Belfort argues that "the fatal flaw in Plaintiff's medical indifference claim is that he did not present evidence of an objectively insufficient response to his medical needs. In addition, [Belfort] submits that the nature of [Lelieve's] alleged injuries, internal bleeding, is not objectively obvious to a layperson." (Mot. 7).

The Court notes that "pretrial detainees are afforded the same protection as prisoners, and cases analyzing deliberate indifference claims of pretrial detainees and prisoners can be used interchangeably." *McDaniels v. Lee,* 405 Fed.Appx. 456, 458 (11th Cir.2010). The Eleventh Circuit has held that a prison official acts with deliberate indifference by intentionally delaying medical treatment for an inmate who has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. *See Goebert v. Lee Cnty.,* 510 F.3d 1312, 1330 (11th Cir.2007).

▇▇▇▇▇ Qualified immunity cases involving a delay in medical treatment "are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government official and to the constitutional adequacy of what was done to help and when." *Bozeman,* 422 F.3d at 1274. Most cases involving deliberate indifference are "far from obvious violations of the Constitution." *Id.*

In the present case Lelieve asserts the following:

4. [Lelieve] had a seriously [sic] medical need which required immediate medical attention, which has been diagnosed by a physician, and/or is so obvious that even a lay person would easily recognize the necessity for prompt medical attention.

5. Belfort was the lead arresting officer, who had actual knowledge of [Lelieve's] injuries and impending harm because he witnessed the arrest and engaged in the use of excessive force.

6. [Lelieve's] impending harm was easily preventable; however, Belfort was deliberately indifferent to [Lelieve's] serious medical needs, and failed to provide necessary medical care or complete an incident report.

(Resp. ¶¶ 4–6). Lelieve argues that Belfort demonstrated "an objectively insufficient response" to Lelieve's medical needs and is therefore not entitled to a qualified-immunity defense. (*Id.* 6). Specifically, Lelieve asserts: (1) Belfort failed to seek immediate medical attention for Lelieve, (2) Belfort is not allowed to rely on the medical opinion of JMH's staff releasing Lelieve, and (3) Belfort failed to follow Miami Police Department orders. (*See id.* 6–9).

### a. Immediate Medical Attention

Belfort refutes that he was deliberately indifferent to Lelieve's medical needs because (a) internal bleeding is not objectively obvious to a layperson, and (b) Lelieve has not presented evidence of an objectively insufficient response to his medical needs. (*See* Mot. 7). The Court addresses each argument in turn.

### i. Objectively Obvious Medical Need

According to Lelieve, Belfort punched, kicked, and stomped on Lelieve following his arrest. (*See* Former Compl. 6). Sometime thereafter, Lelieve was "placed into the rear of the awaiting Patrol Car bleeding from his mouth[ ][and] spitting blood."[4] (*Id.* 6). Lelieve was then taken

---

**4.** Lelieve does not explain how much time passed from the moment the struggle ended to the time he was placed in the patrol car.

to JMH. (*See id.* 7). Lelieve argues that Belfort demonstrated "an objectively insufficient response to his medical needs" because Lelieve's situation was "so obviously dire that Belfort must have known that obtaining care for his injuries was an emergency."[5] (Resp. 6) (internal quotation marks omitted). The reason Lelieve's injuries were "obvious" to Belfort is because "Belfort himself caused those injuries by excessive force."[6] (*Id.*). In essence, Lelieve contends that because Belfort was stomping on his stomach, Belfort was in a position to logically conclude that there may be some damage to Lelieve's internal organs—regardless of whether there were outward manifestations signaling internal injury. Belfort rejects Lelieve's contention that his medical condition was objectively obvious. (*See* Mot. 7).

 In dispute, therefore, is whether Lelieve had a serious medical need that was objectively obvious. Such disputed facts, however, do no not compel the Court to deny summary judgment in this case. *See Robinson,* 415 F.3d at 1257 ("Material issues of disputed facts do not foreclose the grant or denial of summary judgment based on qualified immunity."). What the Court must do—considering the facts in the light most favorable to Lelieve—is determine whether Lelieve's injuries would have been obvious to another officer in Belfort's shoes.

The facts of a recent Eleventh Circuit case are illustrative. In *Fernandez v. Metro Dade Police Dep't,* 397 Fed.Appx.

507 (11th Cir.2010), the plaintiff, Juan B. Fernandez, asserted that

> the officers handcuffed him and then kicked him multiple times in his face, causing him to bleed from his nose and mouth, stepped on his face as he lay on the ground, stuck one of their thumbs under his chin to the point where he almost fainted, punched him in the head and ribs, and slammed his face into a vehicle's trunk.

*Id.* at 509. Following this assault, the police took Fernandez to the police station rather than providing medical assistance. *See id.* He remained at the police station for "about nine hours without water or medical treatment while he was in pain, confused, disoriented[.]" *Id.* Fernandez was later taken to Ward D of JMH. *See id.*

The Eleventh Circuit held that Fernandez had not demonstrated an objectively serious medical need for two reasons.[7] First, he did not allege sufficient facts and second, his medical records confirmed there was no serious medical need:

> We do not believe Plaintiff has demonstrated an objectively serious medical need. The evidence Plaintiff submitted, taken in the light most favorable to him, reveals that at most he suffered a bloody nose and mouth which lasted over five minutes, facial bruising, pain, disorientation, and blood clogs in his nose. This, however, is as far as Plaintiff's facts take us because we can only draw those inferences that are supportable by the record.... Plaintiff does not inform the

---

**5.** Lelieve repeatedly insists that his condition was "obviously" dire. (Resp. 6, 7, 9).

**6.** Lelieve alleges in Count I of his Amended Complaint that Belfort violated his constitutional rights by using excessive force during the arrest. (*See* Am. Compl. 7). Belfort does not seek summary judgment on this claim.

**7.** The Eleventh Circuit in *Fernandez* analyzed the facts of that case to determine if Fernan-

dez suffered a serious medical need. In the instant case, it is undisputed that Lelieve's internal bleeding ultimately required surgery, but the parties disagree about whether such a condition was obvious to Belfort. (*See* Mot. 7; Resp. 6). Therefore, the beating endured by Fernandez and resulting medical opinion are helpful in determining what was, or was not, obvious regarding the seriousness of Lelieve's injuries.

Court how much longer than five minutes he bled. Notably, he has never alleged that he continued to bleed after being transported to the police station from the arrest scene. The fact that he maintains his nose was full of "blood clogs" while at the police station would, in fact, suggest the bleeding had stopped. . . .

And, Plaintiff's medical records confirm he did not have an objectively serious medical need either at the time of the arrest or by virtue of the delay between arrest and receiving medical attention at Ward D.

*Id.* at 512 (internal citation omitted).

The facts and the absence of facts in this case are strikingly similar. First, Lelieve asserts Belfort kicked and stomped on him, much as the officers did to Fernandez. Second, Lelieve walked to the patrol car bleeding from his mouth, similar to Fernandez. Third, Lelieve does not assert that his bleeding continued after entry into the police car, and neither did Fernandez. Fourth, Lelieve was taken to JMH,[8] just like Fernandez. Finally, like in *Fernandez,* the hospital released Lelieve after finding no serious medical condition (although the Court acknowledges JMH discovered a serious medical condition, *i.e.* internal bleeding, upon Lelieve's re-admission).

The parallels between the facts in *Fernandez* and the instant facts are instructive when trying to determine what another officer would have been on notice of at the time of Lelieve's assault. Fernandez was kicked, stepped on, punched in the head and ribs, and his face was slammed into the trunk of a vehicle. *See Fernandez,* 397 Fed.Appx. at 509. On these facts the Eleventh Circuit held there was no serious medical need. *See id.* at 512.

Here, Belfort kicked and stomped on Lelieve, yet Lelieve's injuries were apparently minor enough to allow JMH's medical staff to release him after finishing their medical examination. If assaulting Fernandez resulted in no serious medical need, a standard that is met on a showing that the need "is so obvious that a lay person would recognize the need for medical treatment," *Burnette v. Taylor,* 533 F.3d 1325, 1330 (11th Cir.2008), surely a similar assault on Lelieve—*minus* a head slam into a vehicle trunk—would not necessarily indicate to a reasonable officer that Lelieve had a serious medical need that required immediate medical attention, even if Belfort had punched and kicked Lelieve.

As a result, the Court finds that Belfort was not on notice of Lelieve's injuries because they were not objectively obvious.

### ii. Delay in Medical Treatment

 Even assuming that Belfort was on notice of the seriousness of Lelieve's injuries, Lelieve has failed to put forth sufficient evidence demonstrating that Belfort's failure to administer immediate medical attention violated Lelieve's constitutional rights. "Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay." *Pourmoghani–Esfahani v. Gee,* 625 F.3d 1313, 1317 (11th Cir.2010). Here, "Lelieve is alleging deliberate indifference for the delay caused by Belfort in failing to provide him immediate medical attention." (Resp. 7). Specifically, Lelieve contends that following his assault he "was placed in the rear of the . . . Patrol Car . . . . [and not] rushed into surgery for internal injury and bleeding" until within two hours later. (Former Compl. 6; *see also* Resp. ¶ 7).

---

**8.** While Lelieve concedes he was taken to JMH, he insists this was improper procedure because it violated departmental orders of the Miami Police Department. (*See* Resp. 2). The Court addresses this issue later in the Order.

The Court does not find that Belfort's actions constitute an excessive delay rising to the level of a constitutional violation. Significantly, Lelieve's contention of a two-hour delay begins *at the time he was placed into the patrol car.*[9] (*See id.*). This is important because it is undisputed that after he entered the police car, Lelieve was transported to JMH for medical treatment. (*See* Mot. ¶ 10 (citing Former Compl. 7); Resp. ¶ 10 (asserting "Plaintiff maintains that he was transported to Ward D [of JMH]")). Because Lelieve fails to specify how much time elapsed during this period, the Court, therefore, cannot find any delay in this procedure, let alone an excessive delay. *See Brown v. Hughes,* 894 F.2d 1533, 1539 (11th Cir.1990) (finding that some defendants did not display deliberate indifference because the procedure of sending the plaintiff to the hospital was "sufficient" to treat his broken foot).

The Court acknowledges that some period of time elapsed after JMH released Lelieve after his first visit and he was later re-admitted to JMH for surgery. But as the Court discusses below, Belfort was entitled to rely on JMH's initial medical opinion releasing Lelieve. Belfort, therefore, was not responsible for the two hours that elapsed from the time Lelieve was placed in the patrol car to the time he was rushed to JMH for surgery. In addition, there is no record evidence suggesting that Belfort denied Lelieve's requests for medical treatment at any point during the day. *Cf. Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir.1976) (A "prisoner states a proper cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention. . . ."). Rather, Lelieve was driven to JMH "after

he was arrested and complained of injuries." (Mot. 7).

In sum, Lelieve contends the entire ordeal amounts to a constitutional violation because Belfort's actions were not "immediate." (Resp. 7). But Lelieve presents no evidence to support this. By contrast, from the record it appears that Lelieve was assaulted, placed into a police car, and then taken to JMH for medical treatment. Even viewing the evidence in the light most favorable to Lelieve, it is not insufficient to have transported him to the hospital following his assault. Nor would a reasonable factfinder conclude such action constitutes an "excessive delay" rising to a constitutional violation sufficient to overcome a qualified-immunity defense.

Nonetheless, Lelieve maintains that it is "well-settled law" in the Eleventh Circuit that delays of a couple of hours may constitute deliberate indifference to a serious medical need. (Resp. 8). For support he cites the following cases: *Brown,* 894 F.2d at 1538–39 (finding one defendant was deliberately indifferent to the plaintiff's medical needs because the officer delayed treatment for a few hours); *Aldridge v. Montgomery,* 753 F.2d 970, 972–73 (11th Cir.1985) (treatment was delayed for two and a half hours after the plaintiff had a bleeding cut under his eye); *Calhoun v. Thomas,* 360 F.Supp.2d 1264, 1282 (M.D.Ala.2005) (medical care was refused during a six hour interrogation while detainee suffered from a gunshot wound); and *Bozeman,* 422 F.3d at 1273–74 (fourteen minute delay while the plaintiff was unconscious).

These four cases, however, are distinguishable because they all involved a delay from the time the officers discovered the plaintiff was injured to the time medical

---

**9.** Had Lelieve indicated how long he was assaulted, or how long he lay on the ground following his assault, a different picture of the

incident would emerge—one that might even show that Belfort delayed medical treatment. But Lelieve presents no such facts.

treatment was sought. For instance, in *Brown,* one defendant "promised to send someone to look at [the plaintiff's broken foot] but never did." *Brown,* 894 F.2d at 1539. In *Aldridge,* the defendant officers ignored a bleeding cut under the plaintiff's eye for two and a half hours. *See Aldridge,* 753 F.2d at 972. In *Calhoun,* the defendant officers delayed treatment for six hours. *See Calhoun,* 360 F.Supp.2d at 1282. Finally, in *Bozeman,* the defendant correctional officers delayed treatment for an unconscious victim for fourteen minutes. *See Bozeman,* 422 F.3d at 1274. In the instant case, by contrast, Lelieve was taken to the hospital following his assault, treated by the medical staff, and subsequently released. There is no record evidence of excessive delay or deliberate indifference.

In sum, Lelieve has not presented evidence—therefore not meeting his burden to overcome a qualified-immunity defense—to show that Belfort responded insufficiently to Lelieve's medical needs.

### b. Reliance on Jackson Memorial Hospital's Medical Opinion

In arguing that Belfort is not entitled to qualified immunity, Lelieve further contends that "Belfort is not entitled [to] rely on a medial [sic] staff's opinion releasing Lelieve from Ward D when Belfort knew that he caused critical life threatening internal injuries on Lelieve, and did nothing to obtain proper medical care for him." (Resp. 7). The Court disagrees.

The instant case is factually similar to *Townsend v. Jefferson County,* 601 F.3d 1152 (11th Cir.2010). In *Townsend,* the plaintiff detainee suffered a miscarriage while in prison and alleged deputies violated her civil rights because the deputies were deliberately indifferent to her serious medical need: (a) by failing to provide adequate medical treatment; and (b) by failing to intervene when the plaintiff received inadequate medical care. *See id.* at

1156–57. In *Townsend,* each deputy knew that a nurse had seen and spoken to the plaintiff and they were aware that the nurse had determined that the plaintiff's condition was "not an emergency." *Id.* at 1158. The Eleventh Circuit ruled:

> In the light of this evidence, no reasonable jury could conclude that either [Defendant] Chambers or Daniels knew that Townsend's situation was an emergency. Chambers had been told by a medical professional that Townsend was not presenting an emergency, and although Daniels had not received the same report, Daniels knew that a medical professional had spoken with Townsend and determined that Townsend could wait several hours for further evaluation.... Townsend has not presented evidence that her situation was so obviously dire that two lay deputies must have known that a medical professional had grossly misjudged Townsend's condition.

*Id.* at 1159 (internal citation omitted).

 Here, Lelieve concedes that he was seen by medical staff at JMH and released back to the police. As in *Townsend,* Lelieve has not presented record evidence demonstrating that his situation was so obviously dire that Belfort must have known that the JMH medical staff grossly misjudged Lelieve's condition; while there is little debate that internal bleeding is a dire condition, it could not have been "obvious" to a lay officer that Lelieve was suffering *internal* bleeding when the only *external* signal Lelieve displayed was a bloody mouth and spitting blood—of which the only record evidence was at the time Lelieve entered the patrol car and not thereafter. Moreover, a plaintiff who "complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental

effect of the delay in medical treatment." *Williams v. S. Fulton Reg'l Jail,* 152 Fed. Appx. 862, 864 (11th Cir.2005) (internal quotation marks and citation omitted). Here, after Lelieve was assaulted, he was driven to JMH for treatment, released by the medical staff, taken to jail, and later returned to JMH for surgery. While it is undisputed that Lelieve underwent surgery for internal bleeding during his second go-around at the hospital, Lelieve has presented no evidence to suggest that he suffered additional injuries or that his initial injuries were exacerbated by being admitted into surgery upon his second visit to JMH rather than his first.

### c. Departmental Orders

Lelieve also asserts that Belfort was deliberately indifferent because he did not follow Miami Police departmental orders. (*See* Resp. 7–8). Specifically, Lelieve quotes two sections of the departmental orders. First, if a " 'subject complains of pain or injury; or in the opinion of the concerned officer or supervisor, has an apparent injury requiring medical attention, officers shall request a fire-rescue unit to be dispatched to the scene.' " (*Id.* 8) (quoting City of Miami Police Department section 21.4.1.21, titled "Medical Attention"). Second, an officer must complete a "Response to a Resistance Report" when a subject has been, among other things, struck or kicked, or when there is a complaint of injury or injury is visible. (*Id.*). Lelieve asserts that such procedures are "clearly established law" and support his position that by not following such orders, Belfort displayed deliberate indifference. (*Id.*).

Decisions of the United States Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida can clearly establish constitutional law in this jurisdiction. *See McClish,* 483 F.3d at 1237. Failure to follow procedures, by itself, does not rise to the level of deliberate indifference. *See Andujar v. Rodriguez,* 486 F.3d 1199, 1204 n. 5 (11th Cir.2007) (noting that "Andujar argues that a City of Miami Rescue Policy required Newcomb and Barea to transport him to a treatment facility. But this observation, even if true, misses the point.... Failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.") (internal quotation marks and citation omitted).

Belfort correctly points out that the departmental orders at issue here did not come from the United States Supreme Court, Eleventh Circuit, or the Florida Supreme Court. (*See* Reply 4–5 [ECF No. 83]). The orders were promulgated by the Miami Police Department. The Court, therefore, cannot consider them when looking to determine if Belfort's actions violated clearly established *constitutional* law. Lelieve cannot bootstrap a constitutional violation onto a departmental order violation.

In sum, Lelieve has not met his burden to demonstrate that Belfort violated a clearly established statutory or constitutional right to overcome the qualified-immunity defense. Specifically, Lelieve has not demonstrated that the seriousness of his medical need was objectively obvious; he has not presented evidence that Belfort responded insufficiently to his medical need; nor has Lelieve shown that the Miami Police departmental orders were clearly established law. Belfort, therefore, is entitled to qualified immunity and as a result, Lelieve cannot survive summary judgment on Count III.

### C. Negligence

In his Motion, Belfort claims Lelieve fails to state a cause of action for the negligent use of excessive force, and the

record evidence does not otherwise support a negligence claim. (*See* Mot. 10).

 " '[I]t is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.' " *Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1263 (11th Cir.2001) (quoting *City of Miami v. Sanders,* 672 So.2d 46, 48 (Fla. 3d DCA 1996)). However, a "separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force." *Id.* (quoting *Sanders,* 672 So.2d at 48). But the negligence part must relate to something other than the application of force during the arrest. *See id.* "It cannot serve as the exclusive basis for liability in an excessive force claim." *Sanders,* 672 So.2d at 48.

Under Count VI of the Amended Complaint titled, "Negligence," Lelieve alleges Belfort breached his duty of care by (a) using excessive force against Lelieve; and (b) failing to provide Lelieve immediate medical care. (*See* Am. Compl. ¶ 88). First, regarding the excessive force claim, the ruling in *Sanders* compels a summary dismissal. *See Sanders,* 672 So.2d at 48 ("[T]here is no such thing as the negligent commission of an intentional tort.").

 Regarding the second claim, however, a general dispute over material facts exists sufficient to preclude summary judgment. Lelieve alleges Belfort "had a duty to exercise care in its [sic] police duties." (Am. Compl. ¶ 87). According to Lelieve, Belfort allegedly breached his duty by failing to provide Lelieve with immediate medical care. (*See id.* ¶ 88). By contrast, Belfort contends that he "was not present for [Lelieve's] arrest and there is no record evidence to indicate [he] knew that [Lelieve] required medical care...." (Mot. 11). In his Reply, Belfort includes only a single sentence addressing Lelieve's negligence claim regarding excessive force and omits reference to his negligence claim regarding Belfort's alleged failure to render immediate medical care. (*See* Reply 5 [ECF No. 83] ).

As discussed, Belfort's alleged failure to render immediate medical attention does not rise to the level of a constitutional violation. A reasonable factfinder may, however, find Belfort negligent for failing to summon fire rescue pursuant to departmental orders, or follow other procedures mandated by the Miami Police Department. Therefore, genuine issues of material fact exist surrounding Belfort's knowledge, involvement, and reaction to the situation sufficient to survive a summary judgment motion. Thus, to the extent Lelieve's claim of Belfort's failure to render immediate medical care is a separate negligence claim brought in conjunction with the excessive force claim, it will be allowed to proceed. *See Sanders,* 672 So.2d at 48.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 81]** is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** with respect to Count III and **DENIED** with respect to Count VI.