Aubrey H. ALDRIDGE,
Plaintiff-Appellant,

v.

Charles MONTGOMERY, et al.,
Defendants-Appellees.

No. 83–8302.

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1985.

Timothy W. Floyd, Athens, Ga., for plaintiff-appellant.

Victoria H. Soto, Atlanta, Ga., Terry A. Dillard, Waycross, Ga., for Montgomery, Austin, McQuaig Hilliard & Stankovic.

Daniell S. Landers, Waycross, Ga., for Pafford, Grant, McDuffie & Rouse.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

## I.  BACKGROUND

Appellant, an inmate at Georgia State Prison, brought this action under 42 U.S.C. § 1983 against two wardens at the Georgia State Prison, four officers of the Ware County Sheriff's Department, two officers of the Georgia State Patrol, and a physician at Georgia State Prison.  The district court granted motions for directed verdict in favor of all defendants except one officer of the Sheriff's Department and one Georgia State Patrol officer, allegedly involved in beating the appellant during his arrest.  A jury verdict was rendered in favor of those two defendants.

The two key issues which we feel warrant consideration concern appellant's claims of unconstitutional denial of necessary medical assistance at the Ware County Jail before his trial and at the Georgia State Prison after his conviction.  Because the district court granted a directed verdict as to both of these issues, we summarize the facts relevant to these issues in the light most favorable to the appellant.  Significantly, in addition to this standard, the state appellees expressly admitted the correctness of the appellant's statement of the facts relating to occurrences at the state prison.

### (1)  *As to the Ware County Jail*

On February 10, 1980, appellant was arrested by several officers of the Ware County Sheriff's Department and two officers of the Georgia State Patrol.  During the arrest, there was a scuffle in which appellant received a one and a half inch cut above his right eye.  After the arrest, appellant was taken to the Ware County Jail and placed in a holding cell for over two hours.[1]  The cut continued to bleed, forming a pool of blood on the floor approximately the size of two hands.  Appellant was then taken to the hospital where his cut required six stitches.  The doctor on duty in the emergency room directed defendant Grant to give appellant icepacks and aspirin for his wound.  Neither of these was given to the appellant.

### (2)  *As to the State Prison*

After conviction, appellant was confined at Georgia State Prison at Reidsville.  In July of 1980, he asked to see a doctor about severe headaches and dizziness that he felt were caused by the injury he received during his arrest.  Defendant Dr. Stankovic responded to appellant's request to be examined.  Dr. Stankovic appeared outside of appellant's cell and upon hearing appellant's complaint told him "... that she would go back and doctor [his] records."  Dr. Stankovic had possession of appellant's medical history, which included many serious head injuries.  He had been injured in an automobile accident, had broken his neck in a swimming accident, had suffered a brain concussion, and had received other blows to his head too numerous for appellant to specify at trial.

Appellant filed a grievance with the warden following Dr. Stankovic's refusal to examine him.  The warden referred the grievance to Dr. Stankovic who reported that appellant had been examined, given medication and referred to the hospital for his complaint.  However, Dr. Stankovic based this report on an examination made by another doctor in 1979, six months before appellant received the injury which may have caused the headaches and dizziness of which he was complaining.  Moreover, Dr. Stankovic testified at trial that she was aware that the records in her possession were based on an examination prior to appellant's February 1980 injury.

## II.  ISSUES

The two key issues for consideration by this Court are as follows:

---

1.  Appellee's brief states that the time was 2½ hours.

1. Whether the trial court erred in directing a verdict for defendants as to appellant's allegations of constitutionally inadequate medical care at Ware County Jail.

2. Whether the trial court erred in directing a verdict for defendants as to appellant's allegations of constitutionally inadequate medical care at Georgia State Prison.

## III. DISCUSSION

### A. *Legal Standards*

■ The standard of review for this Court in reviewing the granting of a motion for directed verdict is whether, considering all of the evidence in the light most favorable to the opponent, the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not reach a different conclusion. *Kaye v. Pawnee Construction Co., Inc.,* 680 F.2d 1360 (11th Cir.1982).

■ We recognize that problems relating to inadequate medical care may require different standards of care between pre-trial detainees (the Ware County case) and convicted prisoners (the state prison case).

To state a claim under 42 U.S.C. § 1983 for inadequate medical care while in prison, an inmate must show deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The holding of *Estelle* relates to a convicted prisoner's Eighth Amendment right to be free from cruel and unusual punishment, whereas a pre-trial detainee has a Fourteenth Amendment due process right to be free from punishment altogether, *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court, in a recent case holding that a city is not obligated to pay for medical services for inmates so long as such services are in fact provided, reiterated that the due process clause of the Fourteenth Amendment "does require the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police. In fact, the due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983). The Court did not decide the precise limits of a governmental agency's duty to provide medical care to pre-trial detainees beyond the *Estelle v. Gamble* test, indicating only that "[w]hatever the standard may be, Revere fulfilled its constitutional obligation by seeing that [the pre-trial detainee] was taken promptly to a hospital that provided the treatment necessary for his injury." *Id.*

### B. *Treatment at Ware County Jail*

■ Appellant argues that the officers at the Ware County Jail violated his rights as a pre-trial detainee by ignoring the bleeding cut for two and a half hours. The appellant stresses the facts that the cut was at least one and a half inches long, that it required six stitches, that there was blood on the floor and on his coat and shirt. The appellant notes that the arresting officers apparently held appellant for so long without treatment because they were waiting for a detective to tell them what to do.

Appellant also argues that the officers violated his rights by failing to give him the icepacks and aspirin prescribed by the doctor for pain upon his return to the jail. Deliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by "intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291. Appellant notes that the doctor even gave the deputy two rubber gloves in which to put ice but that the deputy nevertheless failed to administer any ice or medication for the pain. Viewing the evidence in the light most favorable to the plaintiff, appellant contends that there is a question of fact such that reasonable persons could find that the Ware County officials showed a deliberate indifference to the serious medical needs of

the appellant both before and after his wound received stitches. Thus, appellant contends that the directed verdict was improper.

The defendants respond that any delay or inadequacy of medical care which the appellant received while held in the Ware County Jail did not rise to the level of a constitutional infringement. The defendants note that the appellant was taken to the hospital where his wound was sutured approximately two and a half hours after his arrest. The sutures were later removed and there was never any infection of the cut. During the time he was in the holding cell, the plaintiff was able to walk, talk, and make sense.

The defendants contend that this Court, in reviewing the grant of a motion for a directed verdict, should consider all the evidence, not just that which supports the non-mover's case, *Kaye*, 680 F.2d at 1364. Thus, the defendants point to uncontradicted testimony concerning the county's legitimate interest in the secure and efficient administration of the jail. The jailer testified that it was his responsibility to advise the officer in charge when someone might need medical treatment and that officer would then make a determination as to what treatment was needed. In this case, the jailer notified the detective. The detective testified that he was the senior officer in the sheriff's office at the time, that it was standard procedure for the detective to take charge of a case, that he remained at the crime scene about an hour and a half, and that the first thing he did when he returned to the jail was to examine the plaintiff and to send the plaintiff to the hospital.

We conclude that the first issue raised by these opposing contentions could not be resolved by a directed verdict.

### C. *Treatment in Georgia State Prison*

■ The appellant argues that the facts as summarized above concerning Dr. Stankovic's response to his request for medical assistance show a deliberate disregard of his medical needs. The trial court found

Dr. Stankovic's testimony about the grievance to be "patently incredible." The court stated, "... It appears to me that there is an indifference, whether or not it is deliberate, then that is up to the jury. And if it were my determination to make, I would say that she was deliberate [sic] indifferent. The problem with it is whether or not it is a serious medical need." Appellant argues that evidence of headaches and dizziness coupled with an extensive history of traumatic blows to the head arguably meet any definition of "serious medical need." Appellant notes that Dr. Stankovic had in her possession appellant's medical history showing the series of head injuries summarized above. Appellant testified that his headaches were more pronounced and were located in a different area of his head after his injury in February 1980. Appellant argues that given the plaintiff's previous injuries to his head, complaints of headaches and dizziness could have proven very serious. Viewing the evidence in the light most favorable to the plaintiff, therefore, the appellant contends that a jury could reasonably determine that the plaintiff established a serious medical need and that, therefore, the directed verdict was improper.

The defendants concede that the record does reveal some confusion on the part of Dr. Stankovic as to the chronology of the events in appellant's treatment. Defendants contend, however, that because appellant's arrest-related injury was the only one which reportedly occurred subsequent to his examination by a neurologist in 1979, and because that injury was, in the opinion of all medically trained witnesses, not a serious one, the trial court correctly granted the motion for a directed verdict. The defendants note that the neurologist who examined appellant in 1979 had recommended the very course of treatment subsequently followed by defendants and that this examination had occurred following all but the last of appellant's alleged head injuries. Defendants also note that Section 1983 does not insure that inmates will receive excellent medical care but only that

they will be protected from deliberate indifference to their serious medical needs. *Estelle.* Section 1983 does not protect against medical malpractice.

Viewing the facts as of the time of Dr. Stankovic's refusal even to examine appellant, we are satisfied that there was a jury issue whether appellant at that time had a serious medical need. There was certainly a jury issue on the claim that Dr. Stankovic did show deliberate indifference to appellant's needs in light of the conceded truth of the doctor's statement that she would "doctor" the medical records.

The judgments are REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.