[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13093
_____

D.C. Docket No. 1:10-cv-22183-JLK

CHRISTOPHER URIAH ALSOBROOK,

Plaintiff-Appellant,

versus

SERGEANT ALVARADO,
SERGEANT E. MEDINA,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
DAVID HARRIS,

Defendants-Appellees,

NURSE HARRIS, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 12, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, Circuit Judge, and TITUS,[*] District Judge.

PER CURIAM:

On June 6, 2009, Izell McCloud attacked his cellmate Christopher Alsobrook, beating him with his fists and with a battery in a sock. Alsobrook sued one prison guard, Hugo Alvarado, for deliberate indifference to the substantial risk of serious harm from McCloud, and another prison guard, Edward Medina, for deliberate indifference to his serious medical needs after the fight, as well as two other state officials.[1] The district court granted summary judgment to both guards, finding that Alsobrook failed to present evidence that Alvarado or Medina committed a constitutional violation. The court was only partly right. Alvarado was indeed entitled to summary judgment, but Medina and the two state officials were not.

## I.

Because we are reviewing the district court's grant of summary judgment to the defendants, we view the evidence in the light most favorable to Alsobrook. Cottrell v. Caldwell, 85 F.3d 1480, 1486 n.3 (11th Cir. 1996); see also McCullough

---

[*] Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

[1] Alsobrook raised several other claims in the district court. We address only the claims that Alsobrook did not abandon on appeal. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009) ("As this Court has repeatedly stressed, the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.") (quotation marks omitted).  That evidence includes Alsobrook's sworn complaint, which was properly verified under 28 U.S.C. § 1746(2) and therefore serves as an affidavit under Federal Rule of Civil Procedure 56(c)(4), see Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1305 n.23 (11th Cir. 2011).

On June 6, 2009, Alsobrook and McCloud had been sharing a cell at the South Florida Reception Center for several weeks.  Around 7:20 a.m. that day, McCloud stopped Alvarado as he was making his rounds and told him that "[y]ou need to separate me and my roomie.  I don't like his character and we're going to have some problems if you don't get him out of here right now," and "[i]f you . . . don't get him out, I'm gonna send him out."  McCloud repeated a similar message several times but Alvarado, who was nearing the end of his shift, refused to move either of the inmates, telling them to speak to the next shift sergeant.

About 10 to 15 minutes later, McCloud attacked Alsobrook, striking him repeatedly in the head and face with his fists and then choking him.  After Alsobrook pried McCloud's hands off of his neck, McCloud took a large battery in a sock and used it to beat Alsobrook about the head, shoulders, and arms.  About ten minutes into the attack Alsobrook began kicking the door to his cell in an

3

attempt to attract attention from the guards. Alvarado and Medina, responding to the noise, arrived at the cell around 7:50 a.m., but they just watched the fight without intervening. McCloud stopped beating Alsobrook when the officers arrived but after taking a brief break, he renewed the assault, stopping only when he became "too exhausted to continue." All the while the guards stood by without intervening. By the end of the fight, Alsobrook had cuts on the rear left side of his head, under his right eye, and on his forehead; a bloody nose; swollen and blackening eyes; a swollen left cheekbone; and blood covering "70% of the front of [his] t-shirt and the lap of [his] boxers." Doc. 1 at 9–10.

Once the fight was over Medina asked both inmates to submit to handcuffs. After McCloud refused, Medina left the inmates together in the cell. They remained there for an hour and forty minutes until a captain arrived, got McCloud to agree to be handcuffed, and ordered them to be taken to the infirmary. A nurse eventually prescribed the pain reliever Motrin for Alsobrook but did not order any other treatment.

## II.

After Alsobrook filed an amended complaint, Medina moved to dismiss the claim of deliberate indifference to serious medical needs, contending that he was entitled to qualified immunity. The district court denied him qualified immunity and he pursued an interlocutory appeal. We affirmed. Alsobrook v. Alvarado, 477

F. App'x 710, 713 (11th Cir. 2012). We held that "Alsobrook alleged sufficient facts to demonstrate that his injuries constituted a serious medical need that Medina knew about." Id. at 712 (footnote omitted). We also held that Alsobrook had adequately alleged an unjustifiable delay in treatment because, based on the allegations in Alsobrook's complaint, the only apparent reason for the delay was McCloud's refusal to submit to handcuffs. Id. We concluded that "the law was clearly established at the time of the incident that allegations of an unjustifiable delay of one hour and forty minutes in treating [injuries such as Alsobrook's] were sufficient to plead deliberate indifference." Id. at 713.

Back in the district court, Alsobrook amended his complaint again, adding claims against Secretary Julie Jones of the Florida Department of Corrections and Warden David Harris of the South Florida Reception Center, all based on Alvarado's and Medina's conduct. The parties proceeded with discovery. In a response to an interrogatory, Medina explained that the reason for the hour-and-forty-minute delay in getting Alsobrook medical help was a state regulation that prohibited him from opening the cell door unless both inmates agreed to be handcuffed. That regulation is Florida Administrative Code § 33-602.222(6)(a), which states: "Prior to opening a cell door for any reason, including exercise, medical or disciplinary call-outs, telephone calls, recreation, and visits, all inmates

5

in the cell shall be handcuffed behind their backs, unless documented medical conditions require that an inmate be handcuffed in front."[2]

At the conclusion of discovery, all four defendants moved for summary judgment, arguing that Alsobrook had failed to show that they violated his constitutional rights. A magistrate judge agreed and recommended granting summary judgment to all of the defendants. He concluded that Alsobrook had not shown that Alvarado and Medina violated his constitutional rights, and that because of the failure to establish a constitutional violation, Secretary Jones and Warden Harris were not subject to liability. Alsobrook objected to the magistrate judge's recommendation to no avail. The district court adopted the report and recommendation and granted summary judgment to Alvarado, Medina, Secretary Jones, and Warden Harris. Alsobrook appeals that decision, which we review de novo. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).

---

[2] That regulation applies to inmates in disciplinary confinement. See Fla. Admin. Code § 33-602.222. It appears that Alsobrook and McCloud were not in disciplinary confinement, but instead on "close management," which is "the confinement of an inmate apart from the general population . . . where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla Admin. Code § 33-601.800(1)(d). The close management regulation has a restraint requirement that is nearly identical to § 33-602.222(6)(a). Compare id. § 33-602.222(6)(a), with id. § 33-601.800(14)(a)1. Because those regulations are substantively the same, we will follow the parties' lead and cite the disciplinary confinement regulation.

## III.

### A. Alvarado

Alsobrook contends that Alvarado was deliberately indifferent to a substantial risk of serious harm when he refused to move Alsobrook to a new cell after McCloud told him that the cellmates were having problems. He argues that McCloud's statements to Alvarado were sufficient to put him on notice that Alsobrook needed to be protected from McCloud.[3]

To make out a claim of deliberate indifference to a risk of serious harm based on a guard's failure to protect an inmate, the inmate must show, among other things, that the guard was subjectively aware of a substantial risk of serious harm. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). A guard's subjective awareness has two elements: "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994).

---

[3] Alsobrook also argues that the district court was bound by the law of the case doctrine to find that a reasonable jury could conclude that Alvarado violated Alsobrook's constitutional rights. He bases that contention on the district court's denial of Alvarado's motion to dismiss, which had argued that Alsobrook failed to state a claim of deliberate indifference to a substantial risk of serious harm. But "law of the case applies only where there has been a final judgment," Vintilla v. United States, 931 F.2d 1444, 1447 (11th Cir. 1991) (quotation marks omitted), and a district court's denial of a motion to dismiss is not a final order. The court's order at the dismissal stage did not bind it at the summary judgment stage.

Alsobrook cannot make that showing.  He and McCloud shared a cell without incident for several weeks before the attack.  Just before the fight, McCloud made some cryptic remarks to Alvarado about the cellmates having "problems" and needing to be separated.  Those types of statements, without more, are not enough to make a guard subjectively aware of a substantial risk of serious harm.  See, e.g., Carter v. Galloway, 352 F.3d 1346, 1349–50 (11th Cir. 2003) (rejecting a deliberate indifference claim where the plaintiff told a guard that his cellmate had said the plaintiff would help him fake a hanging "one way or another" because the statement "[did] not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed").  To hold otherwise would be to permit the inmates to select their own cellmates.  The district court did not err in granting Alvarado summary judgment on Alsobrook's claim against him.

## B. Medina

Alsobrook claims that Medina's hour-and-forty-minute delay in getting him medical help after the fight constituted deliberate indifference to his serious medical needs.  The district court granted summary judgment to Medina on that claim, finding that Alsobrook had not established a constitutional violation because his injuries were not serious, and that even if they were serious, Medina lacked subjective knowledge of them.  We disagree.

8

"[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cty., 116 F.3d 1419, 1425 (11th Cir. 1997). A plaintiff must establish four elements to make out a case of deliberate indifference to a serious medical need: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). To determine whether the official's response is objectively insufficient, we must look at the length of the delay in relation to the seriousness of the injury and the reason for the delay. Id. at 1259–60.

At the outset, we note that "[u]nder the law of the case doctrine, both the district court and the appellate court are generally bound by a prior appellate decision of the same case." Oladeinde v. City of Birmingham, 230 F.3d 1275, 1288 (11th Cir. 2000). In our earlier decision in this case we held that, assuming the allegations in Alsobrook's complaint were true, he had "alleged sufficient facts to demonstrate that his injuries constituted a serious medical need that Medina knew about." Alsobrook, 477 F. App'x at 712 (footnote omitted). At the summary judgment stage Alsobrook presented evidence that, taken in the light most

favorable to him, supported those allegations.[4]  We are therefore bound by the law

of the case doctrine to hold that, for summary judgment purposes, Alsobrook has

presented sufficient evidence for a reasonable jury to conclude that he had a

serious medical need and that Medina was subjectively aware of it.  See Oladeinde,

230 F.3d at 1288; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,

106 S. Ct. 2505, 2510 (1986) ("[S]ummary judgment will not lie if the dispute

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.").

The only part of our earlier decision that we are not bound to follow is our

determination that, according to Alsobrook's allegations in his complaint, the hour-

and-forty-minute delay was not justified because it was based solely on McCloud's

refusal to be handcuffed.  See Alsobrook, 477 F. App'x at 712.  On remand to the

district court, Medina presented evidence that Florida Admininistrative Code § 33-

602.222(6)(a) prohibited him from opening the cell door when any inmate in the

cell refused to be handcuffed.  That is new and substantially different evidence

presented at the summary judgment stage that we did not have before us when we

last addressed the delay in treatment at the motion to dismiss stage.  See

Oladeinde, 230 F.3d at 1288 ("[W]e may reconsider an issue already decided by

---

[4] Medina's contention that Alsobrook's description of his injuries was "greatly exaggerated" is merely a dispute of the facts, which does not warrant a grant of summary judgment.  See Fed. R. Civ. P. 56(a).

10

this court in the same case if, since the prior decision, new and substantially different evidence is produced, or there has been a change in controlling authority," or "the prior decision was clearly erroneous and would result in a manifest injustice."). We must therefore reassess the justification for Medina's delay.

The handcuffing regulation provides:

> Prior to opening a cell door for any reason, including exercise, medical or disciplinary call-outs, telephone calls, recreation, and visits, all inmates in the cell shall be handcuffed behind their backs, unless documented medical conditions require that an inmate be handcuffed in front. In such cases, waist chains will be used in addition to the handcuffs and the escort officers shall be particularly vigilant.

Fla. Admin. Code Ann. § 33-602.222(6)(a). The regulation itself does not provide for any exceptions, even for medical emergencies. See generally id. § 33-602.222. Other regulations suggest that exceptions do exist. See, e.g., id. § 33-602.206(4)(c) (providing that one priority in a medical emergency is to "[r]emove endangered persons and obtain treatment for the injured"). But neither the regulations nor the parties have clearly explained what, if any, exceptions would apply when one cellmate has a serious medical need and the other cellmate refuses to be handcuffed.

We need not delve too deeply into that question, however, because at oral argument, Medina conceded that if Alsobrook had a serious medical need, Medina

11

would have been required to enter the cell to address that need regardless of McCloud's refusal to consent to handcuffs. We have already determined that a reasonable jury could conclude that Alsobrook had a serious medical need and that Medina was subjectively aware of that need. So even under Medina's understanding of the regulation, he should have removed Alsobrook from the cell to get him medical treatment. But instead he left Alsobrook in a cell with his attacker for an hour and forty minutes, during part of which time the attack continued.

Based on the facts taken in the light most favorable to Alsobrook, a reasonable jury could conclude that Medina was deliberately indifferent to his serious medical needs. See Taylor, 221 F.3d at 1258. The district court erred in granting Medina summary judgment based on its conclusion that Alsobrook failed to present evidence that Medina committed a constitutional violation.

That is not the end of the inquiry, however, because Medina contends in the alternative that he is entitled to qualified immunity for that constitutional violation. Because "[w]e may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below," we will also address that alternative argument. Powers v. United States, 996 F.2d 1121, 1123–24 (11th Cir.1993).

12

Qualified immunity "shields government officials performing discretionary acts from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Merricks v. Adkisson, 785 F.3d 553, 558 (11th Cir. 2015) (quotation marks omitted). To be entitled to qualified immunity, the official must "first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted). Once the official has made that showing, the burden shifts to the plaintiff to establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011) (quotation marks omitted). It is undisputed that Medina was acting in his discretionary authority, and we have already determined that a reasonable jury could conclude that he violated a constitutional right. The only remaining question is whether that right was clearly established as of June 6, 2009.

"A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) (footnote omitted). Alternatively, "qualified immunity can be denied where the plaintiff

13

establishes that the defendant's conduct so obviously violated federal law that the defendant must have known the acts violated federal law even in the absence of preexisting caselaw addressing materially similar facts." Id. at 563 n.7.

A 1985 opinion by this Court clearly established the law relevant to this appeal. In Aldridge v. Montgomery, 753 F.2d 970, 971–73 (11th Cir. 1985), we held that several police officers violated the plaintiff's constitutional rights by delaying, for two and a half hours, medical treatment for a one-and-a-half-inch bleeding cut because they "were waiting for a detective to tell them what to do." The Aldridge decision makes it obvious that Medina's alleged acts on June 6, 2009 violated Alsobrook's rights. See Youmans, 626 F.3d at 563. We see no meaningful distinction between the Aldridge decision and this case. The fact that the plaintiff in Aldridge ultimately needed stitches for his cut, while Alsobrook was only prescribed Motrin, is immaterial because in both cases the plaintiff suffered wounds that bled profusely, and in both cases, the defendant or defendants left the bleeding inmate in a cell for significant periods of time. See Aldridge, 753 F.2d at 971 & n.1. Under the facts taken in the light most favorable to Alsobrook, it was clearly established at the time of Medina's actions that they violated

14

Alsobrook's constitutional rights. See id. As a result, Medina is not entitled to qualified immunity at this stage of the proceedings.[5]

## C. Secretary Jones and Warden Harris

In addition to his challenges to the district court's grant of summary judgment to Alvarado and Medina, Alsobrook seeks reversal of the grant of summary judgment to Secretary Jones and Warden Harris. The district court did not address the merits of Alsobrook's claims against those defendants because it concluded that they depended on his claims against Alvarado and Medina. Because we reverse the grant of summary judgment to Medina, we also reverse the grant of summary judgment to Secretary Jones and Warden Harris. We do not, however, otherwise express any opinion on his claims against those defendants. We leave that to the district court to decide. See Schwier v. Cox, 340 F.3d 1284, 1294 (11th Cir. 2003) (concluding that when "[t]he district court did not reach [an] issue," remand was appropriate for the court to consider the issue "in the first instance").

---

[5] We do not mean to suggest that Medina is barred from raising a qualified immunity defense on remand to the district court. See Cottrell, 85 F.3d at 1488 ("When a district court has denied the qualified immunity defense prior to trial based upon its determination that the defense turns upon a genuine issue of material fact, the court should revisit that factual issue when, and if, the defendant files a timely Fed. R. Civ. P. 50(a) or (b) motion."); id. at 1487 ("Moreover, a district court can, when needed, use special verdicts or written interrogatories to the jury to resolve disputed facts before the judge rules on the qualified-immunity question.") (alteration and quotation marks omitted).

15

We **AFFIRM** the grant of summary judgment to Alvarado, **REVERSE** the grant of summary judgment to Medina, Secretary Jones, and Warden Harris, and **REMAND** for further proceedings consistent with this opinion.