**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10550

Non-Argument Calendar

_____

MARLON BROWN,

*Plaintiff-Appellant,*

*versus*

JANE DOE
   Nurse, individual capacity,

*Defendant,*

MAUREEN RICEWICK,
MICHAELA BEARD,
ANIECE THERMIDOR,
JENICE JACKSON,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cv-00545-JES-KCD

_____

Before JORDAN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Marlon Brown, a state prisoner proceeding *pro se*, appeals the grant of summary judgment on his 42 U.S.C. § 1983 claims for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. After careful review of the record and the parties' briefs, we vacate the judgment in part, affirm in part, and remand for further proceedings. We also dismiss Brown's challenge to the magistrate judge's denial of his motions to amend the complaint and for appointment of counsel.

**I.**

Brown injured his hand while preparing for a medical appointment at Desoto Correctional Institution-Annex (Desoto Annex) on September 26, 2020. As he was getting dressed, the lid of his medical locker slammed down on his dominant right hand, injuring his ring finger and little finger. When he arrived at the appointment, he showed his swollen and "deformed" fingers to an

unidentified nurse[1], who directed Brown to submit a sick-call request.

Brown testified that, over the next three months, he made repeated requests for medical treatment for his injured figures, to little avail. He submitted four sick-call requests about his injured fingers, on September 28, October 9, October 20, and November 23 of 2020. He also complained to several nurses—Defendants Michaela Beard, Jenice Jackson, Maureen Ricewick, and Aniece Thermidor (collectively, "Defendants")—about his finger injuries and attendant pain at unrelated medical appointments on October 1, October 19, October 30, November 2, and November 24 of 2020. Each time, Defendants refused to provide treatment, and instead directed Brown to submit another sick-call request.

Eventually, Brown was seen about his injured fingers on December 18 and December 24, and x-rays were ordered. On January 12, 2021, the x-ray results confirmed what Brown suspected all along—his ring finger and little finger were fractured. Specifically, Brown had suffered acute dorsal plate fractures of the distal phalanx in his fourth and fifth fingers.

Notes from a follow-up visit on January 26, 2021, reflect that Brown's injured fingers were finally splinted, but that he refused an orthopedic consult. His fingers were noted to have

---

[1] Brown's complaint named the nurse anonymously as "Jane Doe," but the district court later dismissed Brown's claim against Doe for failure to prosecute and to comply with a court order.

"malformation," mild edema, tenderness on touch, and decreased range of motion, and he was prescribed pain medication. Brown asserts that his fingers "were never splinted," however, and that he was simply given tape and gauze to tie his fingers together because the available splints did not fit his fingers. According to Brown, the nurses who examined him on January 26 stated that his fingers had started to heal in a "deformed position requiring surgery to repair." Brown admits that he refused the outside orthopedic consultation at that time.

In April 2022, following numerous visits about his fingers, a jail clinician noted that Brown had extension deformities in his right ring finger and little finger, indicating tendon injuries. He was diagnosed with mallet fingers with complete tears in the tendons, as well as "trigger finger." He was eventually scheduled for surgery in late 2022 or early 2023.

## II.

Brown brought this § 1983 lawsuit *pro se* in July 2021, alleging claims under the Eighth Amendment against the nurses who examined him between October 2020 and December 2020. He asserted that Defendants failed to provide proper treatment for his fingers and were deliberately indifferent to his serious medical needs. The district court denied Defendants' motion to dismiss, and the case proceeded to discovery.

In March 2022, Brown moved to appoint counsel, stating that he needed the assistance of counsel because the issues were complex and he was indigent, unskilled, and had little access to the

law library due to the COVID-19 pandemic. A magistrate judge denied the motion, finding that no extraordinary circumstances justified appointing counsel for his "straightforward" allegations.

Later, Brown moved to amend his complaint to incorporate more recent events, including his tendon injuries and mallet finger and trigger diagnoses, as well as a claim for negligence under federal and state law. He again requested appointment of counsel. Defendants responded that Brown's attempt to add a negligence claim was futile. A magistrate judge denied the motion to amend as untimely and futile.

Meanwhile, Defendants moved for summary judgment on all claims. They asserted that Brown's medical records contradicted many of his factual allegations, including when he first requested treatment for his fingers, and that he received appropriate treatment for his injuries once Defendants knew of them. In particular, Defendants claimed that Brown failed to submit a sick-call request about his fingers, or to raise the issue with his providers, until December 18, 2020.

Brown responded in opposition and submitted additional evidence, including a personal declaration and copies of four sick-call requests that Brown claimed he submitted on September 28, October 9, October 20, and November 23 of 2020. Brown argued that Defendants ignored his injured hand and severe pain from September 28, 2020, to December 18, 2020, that the care he eventually received was not appropriate for or responsive to his injuries, and that the delay in treatment worsened his condition and led to his

mallet-finger and trigger-finger diagnoses.  Brown asserted that Defendants' "callous disregard for [his] injuries and requests for treatment . . . for 3½ months" constituted cruel and unusual punishment in violation of the Eighth Amendment.

The district court granted summary judgment for Defendants.  The court found that genuine factual disputes existed as to whether Brown informed Defendants of his finger injuries prior to December 18, 2020, and whether they provided constitutionally adequate care during their encounters with Brown.  The court stated that Brown carried his burden on these matters by "testifying (via affidavit) that he showed his swollen and deformed fingers to each Defendant before December 18, 2021, and each declined to provide any treatment."  The court reasoned, however, that there was no admissible evidence to suggest that the three-month delay in treatment worsened Brown's condition.  Thus, the court concluded that Brown failed to establish a causal connection between the delay in treatment and his mallet-finger and trigger-finger diagnoses.  And the court found no evidence to suggest that any defendant was deliberately indifferent to his finger injuries after December 24, 2020, when Brown was first referred for x-rays.

Brown moved for reconsideration, asserting that the district court erred in characterizing his claim as based solely on a delay in treatment.  He maintained that the crux of his claim was a "complete failure to provide treatment" for an injury that obviously required medical attention.  He also disputed the court's assessment that the evidence failed to show that the delay worsened his finger

injuries.  The court denied the motion as an attempt to "relitigate the causation issue, which the Court already decided."  This appeal followed.

### III.

"We review a grant of summary judgment *de novo*, viewing the evidence and all resulting inferences and doubts in the light most favorable to the non-moving party."  *Wade v. Daniels*, 36 F.4th 1318, 1323 (11th Cir. 2022).  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (quotation marks omitted).  "We may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below."  *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

Under the Eighth Amendment, federal and state governments "have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration."  *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).  Deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."  *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quotation marks omitted).  "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference

and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

## A. Serious Medical Need

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quotation marks omitted). In the alternative, "a medical need is sufficiently serious if a delay in treatment worsens the condition." *Id.*; *see also Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) ("One test is whether a delay in treating the need worsens it."). "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Mann*, 588 F.3d at 1307 (quotation marks omitted).

We have recognized that "broken bones and bleeding cuts are serious medical needs." *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016); *see Brown v. Hughes*, 894 F.2d 1533, 1247 (11th Cir. 2003) (broken foot and attendant pain presented serious medical needs); *Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir. 1985) (one-and-a-half-inch cut over detainee's eye bleeding for two and a half hours was a serious medical need). Broken bones may present "situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." *Melton*, 841 F.3d at 1222. Indeed, "[a] core principle of Eighth Amendment

jurisprudence . . . is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott*, 182 F.3d at 1257.

Viewed in the light most favorable to Brown, the record supports a finding that Brown had a serious medical need for treatment after he fractured the fourth and fifth fingers on his right hand. Brown testified that his injured fingers became swollen, severely painful, and visibly "deformed," and at least one nurse observed that his fingers appeared to be broken. Those conditions persisted at least through January 26, 2021, when a nurse noted that Brown reported "ongoing pain 8/10" and an inability to use his injured fingers due to pain, and that x-rays showed acute dorsal plate fractures of the distal phalanx in both fingers. The nurse also made findings of "malformation," swelling, and tenderness. In addition, Brown was referred for an orthopedic evaluation, and eventually surgery.

Given the swollen and "deformed" nature of Brown's fractured fingers, as well as the pain he experienced for months after the injury, a reasonable jury could find that he suffered from a serious medical need that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann*, 588 F.3d at 1306–07; *see Melton*, 841 F.3d at 1222 (broken arm and attendant severe pain presented serious medical need); *Brown*, 894 F.2d at 1538–39 (broken foot and attendant pain presented

serious medical need).  Accordingly, Brown has presented suffi-cient evidence to establish an objectively serious medical need.

## B. Deliberate Indifference

To show that a defendant acted with deliberate indifference, the plaintiff "must demonstrate that the defendant acted with sub-jective recklessness as used in the criminal law, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*) (citation and quotation marks omitted).  If the defendant "re-sponded reasonably to the risk," however, he cannot be found lia-ble.  *Id.* (quotation marks omitted).

The Eighth Amendment does not require medical care for prisoners to be "perfect, the best obtainable, or even very good." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020) (quotation marks omitted).  So "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment."  *Harris*, 941 F.2d at 1505.

But we have "consistently held that knowledge of the need for medical care and intentional refusal to provide that care consti-tute deliberate indifference."  *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989); *see Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994) (stating that it was "clearly established that knowledge of the need for medical care and intentional refusal to provide that care consti-tuted deliberate indifference.").  "Even where medical care is

ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott*, 182 F.3d 1248; *see Hill*, 40 F.3d at 1187 ("Delay in access to medical attention can violate the Eighth Amendment, when it is tantamount to unnecessary and wanton infliction of pain."). Whether a delay is constitutionally tolerable "depends on the nature of the medical need and the reason for the delay." *Harris*, 21 F.3d at 394. Thus, "[a] defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for nonmedical reasons may . . . exhibit deliberate indifference." *Melton*, 841 F.3d at 1223.

We have said that "[a] few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference." *Harris*, 21 F.3d at 394; *see Melton*, 841 F.3d at 1222 ("[B]roken bones and bleeding cuts are serious medical needs that require attention within hours."); *Brown*, 894 F.2d at 1533 (approximate six-hour delay in medical treatment for "a serious and painful broken foot is sufficient to state a constitutional claim"). "For these kinds of serious injuries, . . . the law was clearly established that several weeks was too long to fail to properly respond to the medical need." *Harris*, 21 F.3d at 394.

When we evaluate a deliberate indifference claim, each defendant "must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Because "a finding of deliberate indifference requires a

12                    Opinion of the Court                    24-10550

finding of the defendant's subjective knowledge of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." *Melton*, 841 F.3d at 1224 (quotation marks omitted). Accordingly, we consider the evidence as to each specific defendant.[2]

### (1) Thermidor

Brown saw ARPN Thermidor for an unrelated medical appointment on October 1, 2020, less than a week after Brown injured his fingers on September 26, 2020. Brown "complained to her about [his] injured fingers and the pain [he] was experiencing." Thermidor advised him that the appointment was not for his fingers and that he needed to submit a sick-call request. Brown did not see Thermidor after this appointment.

The record does not support a reasonable inference that Thermidor acted with deliberate indifference. While she had reason to believe Brown had injured his fingers, the evidence does not show she was aware that Brown's fingers were broken, or that the sick-call procedure would be inadequate to obtain treatment. Although Brown had already submitted a sick-call request about his fingers, nothing in the record shows Thermidor was aware of that

---

[2] Defendants broadly deny Brown's evidence on these matters, averring that they did not see Brown on many of the dates alleged or know of his finger injuries, but we must resolve these factual disputes in Brown's favor at summary judgment. *See Wade v. Daniels*, 36 F.4th 1318, 1323 (11th Cir. 2023).

fact. So, it would not have been unreasonable for Thermidor to advise Brown to resort to the ordinary sick-call procedure.

(2) Ricewick

Brown saw LPN Ricewick for an unrelated medical appointment on October 19, 2020. Brown showed his injured fingers to Ricewick, who stated that they looked broken and that he would be rescheduled. Yet, she still informed Brown that he needed to put in a sick-call request.

Then, on November 2, 2020, at an eye appointment with Ricewick, Brown asked why nothing had been done about his fingers, noting that Ricewick had told him that his fingers looked broken at the last appointment. Ricewick stated, "Inmate Brown, I suggest you submit another sick-call request."

Brown finally obtained an appointment for his injured fingers with Ricewick on December 18, 2020. But Ricewick did not refer Brown for x-rays until nearly a week later, after noting that his injured fingers were swollen and deformed.

In contrast to Thermidor, the record supports a finding that Ricewick acted with deliberate indifference to Brown's serious medical needs. A reasonable jury could conclude that Ricewick knew or at least suspected that Brown's fingers were broken as of October 19. Despite that knowledge, Ricewick did not provide any treatment, whether through pain medication or splinting, at appointments on October 19, November 2, and December 18, nor did she notify other medical staff or refer Brown for diagnostic x-rays until December 24. *See Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th

Cir. 1989) ("The law was clear in 1984 that prison officials have an obligation to take action or to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care."). These facts, accepted as true, support an inference that Ricewick knowingly disregarded Brown's broken fingers and attendant pain for approximately two months, which is more than enough time to establish a constitutional claim. *See Melton*, 841 F.3d at 1222 ("[B]roken bones and bleeding cuts are serious medical needs that require attention within hours."); *Brown*, 894 F.2d at 1533 (approximate six-hour delay in medical treatment for "a serious and painful broken foot is sufficient to state a constitutional claim"); *see also Harris*, 21 F.3d at 394 ("For these kinds of serious injuries, . . . the law was clearly established that several weeks was too long to fail to properly respond to the medical need.").

Defendants respond that it was reasonable to direct Brown to submit sick-call requests. They point to the policies and procedures governing sick-call requests, which reflect that patients who report non-emergent conditions will be evaluated "in a timely manner not to exceed one week," with "emergent" or "urgent" conditions evaluated sooner. So, in Defendants' view, it was reasonable to believe that Brown would receive prompt medical attention through ordinary sick-call procedures.

Drawing all reasonable inference in favor of Brown, however, a reasonable jury could conclude that Ricewick was aware that the sick-call procedures had been ineffective for Brown to receive treatment. Ricewick's comments at the November 2

appointment, directing Brown to submit *"another* sick-call request,"* indicate her awareness that Brown had followed her previous instructions to no avail, even though two weeks had passed since the last appointment, and that his injured fingers remained swollen, deformed, and painful. Given this background, a jury could conclude that simply directing Brown to resort to a procedure that had already proved futile, without providing any treatment in the interim, was not a reasonable response to his serious medical needs. *See Wade*, 106 F.4th at 1262.

For these reasons, we conclude that genuine issues of material fact exist as to whether Ricewick acted with deliberate indifference to Brown's serious medical needs.

### (3) Beard

On October 30, 2020, Brown had an unrelated appointment for medication renewal with nurses Beard and Jackson. Brown asked what had happened with his sick-call request for his broken fingers that he had submitted on October 20, 2020. Brown showed them his "swollen fingers and informed them of the pain [he] had been experiencing." Beard asked how long it had been since he had injured his fingers, and Brown responded that it had been close to one month. Beard and Jackson suggested he submit a sick-call request. Brown responded that that he had already submitted several sick-call requests and that his fingers were clearly broken. Beard and Jackson became argumentative and advised him to submit another sick-call request.

For similar reasons as discussed above with respect to Rice-wick, the record supports a finding that Beard acted with deliberate indifference to Brown's serious medical needs. Brown's evidence indicates that Beard was aware that Brown's fingers were broken and painful. Brown clearly stated as much, and he showed Beard his fingers, which remained swollen and painful more than a month after the injury. Brown also informed Beard that he had submitted a sick-call request ten days earlier but had not received any treatment. Thus, despite the obvious nature of Brown's medical needs, Beard failed to provide any treatment or to inform competent authorities, and instead became argumentative and advised him to submit another sick-call request. *See Waldrop*, 871 F.2d at 1036. And, again, a reasonable jury could conclude that simply directing Brown to submit another sick-call request was not a reasonable response. *See Wade*, 106 F.4th at 1262.

(4) Jackson

Our analysis with respect to Beard applies with equal force to Jackson, who was present with Beard for the appointment on October 30. In addition, Brown saw Jackson for an eye appointment nearly one month later, on November 24, 2020. After speaking with Jackson about his swollen and painful fingers, Jackson said she was "tired of hearing about [his] fingers." Jackson's failure to provide any treatment or to inform competent authorities under these circumstances, along with her express dismissal of his medical needs, support a reasonable inference that she acted with deliberate indifference to Brown's serious medical needs.

*C. Causation*

Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). "A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Id.*

Here, sufficient evidence supports a causal connection between the actions of Defendants Beard, Jackson, and Ricewick, and the constitutional injury.[3] "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not . . . cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligot*, 182 F.3d at 1257. In short, "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain." *Id.*; *see Brown*, 894 F.2d at 1538 (holding that the failure to treat the pain from a broken foot, even for a few hours, was a constitutionally cognizable injury); *Aldridge*, 753 F.2d at 972–73 (reversing directed verdict to officers who failed to provide ice pack and aspirin for pain caused by bleeding cut).

Brown's evidence reflects that each of these defendants, by failing to provide any treatment for Brown's known, serious medical needs, caused him to needlessly suffer severe, ongoing pain in

---

[3] On this point, we need not consider Defendant Thermidor in light of our conclusion that the evidence does not support a finding of deliberate indifference as to her.

his broken fingers for at least one month, if not longer. *See McElligott*, 182 F.3d at 1257–58; *see also Melton*, 841 F.3d at 1229 (holding that a jury could find that a nurse's deliberate indifference was the cause of the plaintiff's constitutional injury where she failed "to render any treatment for more than two months after his injury"). To the extent the record fails to show that the failure to treat Brown sooner caused his tendon injuries and mallet-finger and trigger-finger diagnoses, as the district court concluded, we cannot say such evidence is necessary for Brown to establish a causal connection between Defendants' actions and a constitutional injury—an unnecessary and wanton infliction of pain—even if it may be relevant to the measure of damages. *See Melton*, 841 F.3d at 1228–29; *McElligott*, 182 F.3d at 1254, 1257–58; *see also Hill*, 40 F.3d at 1187 ("Delay in access to medical attention can violate the Eighth Amendment, when it is tantamount to unnecessary and wanton infliction of pain.").

Accordingly, we conclude that, viewing the record in the light most favorable to Brown, all three elements of a § 1983 deliberate indifference claim are met against Defendants Beard, Jackson, and Ricewick, but not as to Defendant Thermidor. We therefore vacate the grant of summary judgment on Brown's claims against Beard, Jackson, and Ricewick, and we remand for further proceedings consistent with this opinion. We affirm the grant of summary judgment as to Thermidor.

**IV.**

Finally, Brown contends that the district court abused its discretion by denying his motions to amend the complaint and for appointment of counsel. Ordinarily, we review the denial of a motion to amend a complaint or for appointment of counsel for an abuse of discretion. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010) (amendment); *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (appointment of counsel). We are unable to review these rulings in this appeal, however, because they were entered by a magistrate judge and Brown did not challenge them before the district court.

For starters, we lack "jurisdiction to hear appeals directly from federal magistrate[ judges]." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980).[4] When a magistrate judge enters an order on a non-dispositive pretrial matter, *see* 28 U.S.C. § 636(b)(1)(A), we lack jurisdiction to review the order unless the party has "appealed the ruling to the district court." *United States v. Brown*, 441 F.3d 1330, 1352 (11th Cir. 2006). Because Brown "did not appeal the magistrate judge's order[s] to the district court, we lack jurisdiction to review the merits of the magistrate judge's order[s]" denying amendment of the complaint and appointment of counsel. *United States v. Schultz*, 565 F.3d 1353, 1362 (11th Cir. 2009)

Similarly, Rule 72(a) of the Federal Rules of Civil Procedure states that, when a magistrate judge enters a non-dispositive

---

[4] This Court adopted as binding precedent all Fifth Circuit decisions by the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

pretrial ruling, a party must object to that ruling within 14 days after being served with a copy of the order, and "may not assign as error a defect in the order not timely objected to." *See* Fed. R. Civ. P. 72(a). "We have read Rule 72 to mean that where a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this Court." *Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1099 (11th Cir. 2024) (quotation marks omitted). Because Brown failed to timely object to the magistrate judge's non-dispositive orders denying his motion to amend the complaint and for appointment of counsel, he has waived the right to appeal those issues before this Court. *See Smith*, 106 F.4th at 1099–1100 (challenge to denial of motion to amend waived); *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365–66 (11th Cir. 2007) (challenge to order regarding representation waived).

Accordingly, we lack jurisdiction to review the merits of Brown's motions to amend and for appointment of counsel, and these challenges would be waived even if we had jurisdiction. Nonetheless, given our ruling on the merits of his claims, Brown may renew his request for appointment of counsel on remand.

## V.

In sum, we vacate the grant of summary judgment on Brown's § 1983 deliberate-indifference claims against Defendants Beard, Jackson, and Ricewick, and we remand for further proceedings consistent with this opinion. We affirm the grant of summary judgment with respect to Defendant Thermidor. We dismiss

24-10550                  Opinion of the Court                    21

Brown's appeal of the magistrate judge's orders for lack of jurisdiction.

**VACATED and REMANDED in part; AFFIRMED in part; DISMISSED in part.**